Good morning. Pleased the court. My name is Blake Hall. I represent Detective Doug Armstrong. I'd like to reserve three minutes. We're here today on an interlocutory appeal involving the qualified immunity and the application of the qualified immunity with regard to Detective Doug Armstrong, who was sued by Mr. Christensen for various purposes and all of the issues that were presented in that lawsuit against both Detective Armstrong and other individuals were dismissed with the exception of a claim of malicious prosecution. And so the issue now before this court is whether or not qualified immunity should have applied in this case with regard to the facts as they are presented and whether or not Doug Armstrong is entitled to qualified immunity. The primary issue that, or the primary cases that this court has previously relied upon are Smitty I, Smitty II, and Newman v. the County of Orange in determining under what circumstances a detective can be held liable for, or a police officer can be held liable for what we would refer to as malicious prosecution. Well, now Newman is obviously an important case here, and that's a Ninth Circuit case. The question that I have, is Newman reconcilable with the Saucier directive to take the facts alleged in the light most favorable to the party asserting the injury when considering whether a grant of summary judgment is based on qualified immunity? Because Newman seems to say that you have to show more in a situation of malicious prosecution and, you know, when you look at, you know, Saucier, you know, that on summary judgment the plaintiff gets all inferences in favor. Well, that is true. Both the Smitty cases as well as Newman and Sloman take the position that even if you are taking the facts in a light most favorable towards the non-moving party, that if there is simply a distinction or some difference between the statement in the police report and that of the charged individual, that absent some collaborative information, that it's reasonable to expect that there's going to be some minor differences between the story that might be told at the time that they're being interviewed by the police as compared to what they might have revised their testimony to be at the time they're trying to prevent summary judgment. Well, obviously, from the standpoint, your strongest argument is the prosecutorial intervention here. But there does appear to be some dispute in terms of what Mr. Okay, let me make sure which one's the defendant and which one's the officer here. Mr. Christensen is the defendant. Okay. Mr. Christensen says certain things about his right to bear arms. Officer Armstrong does not say all of the things that Mr. Christensen says to the prosecutor, but basically says something to the effect that Mr. Christensen has raised an issue about whether he can possess firearms. So is that enough to, you know, or is that too little to put the prosecutor on notice that they need to be checking on the nature of the felony and the right to bear arms? In this case, I believe clearly that it is. And the reason for that is that if you look at the facts, the prosecutor, Mr. Colson was actually contacted not by Detective Armstrong relative to the right to bear arms issue. He was contacted by probation and parole before Mr. Armstrong was ever on the scene. They contact probation and parole contacts Colson and says, we're out here doing a search pursuant to a probation violation. We found some firearms. What do you want us to do? Well, we want you to call the Bannock County Police Department Sheriff's Office and get them to come out and respond because you can't take possession of the guns. And if you look at Colson's own testimony, which is on page 51 of the record, Colson says, on April 10th, 2007, I received a telephone call from probation and parole regarding a probation search at the residence of Adam C. Christensen. Steve Christensen is the father who actually owns the residence. And he says, I was informed and verified. So he is informed by probation and parole, and then he independently verifies that Steve Christensen had previously been convicted of a felony of lewd and lascivious conduct with a minor on March 3rd, 1978. And then he says, I informed probation and parole that given Steve Christensen's felony, he may be in violation of Idaho Code 18-3316 and 18-30310 for being a convicted felon in possession of a firearm. Now, is he required to know? As a matter of fact, just as an aside, in Iowa, could not be convicted because it wasn't within the time. In Idaho, that is correct. Now, that's my question. Is he required to know as a reasonable police officer, you know, the effective date of that statute? It doesn't cover convictions that were, you know, earlier than a certain date. If the police officer had made a decision at that time to arrest this individual, then I would suggest that, yes, he should have, maybe he should have known. But he didn't. Oh, no, no. When he passed on this information, well, he may be in violation. I mean, that's absolutely wrong given the date. Colson is the one who is making this statement that he passed on this information to probation and parole. The prosecuting attorney is the individual who initiated this belief. He had a preconceived decision, the prosecutor had, and he tells probation and parole, I think this guy is in violation. When Detective Armstrong arrives on the scene, he is advised by probation and parole that he has, that they have spoken with Colson and that the prosecutor, Colson, has informed probation and parole that this individual is in violation of the statute. And so then there's an inquiry by Armstrong of the, of Mr. Christian, as to whether or not he is in violation. And here's what's interesting about this. So he wasn't, there's not a question about whether he was convicted. The technicality, well, it's not a technicality, it would be, but the thing the statute provides it has to be after a certain date. And when all is said and done at the end, we know that his conviction was actually before that date. Correct. So, but he's not arrested at that, he's, someone tells the officer, don't arrest him, just give me your report and let me look at it. And who's that? The same prosecuting attorney, Mr. Colson. So what then happens is that Mr. Christian says, well, I think I have a right to possess arms. I think my rights are restored. Turns out Mr. Christian is wrong. His rights had never been restored because they'd never been taken away. So here's what's so interesting. What happens then is they conduct a further, Detective Armstrong conducts a further investigation. At that time he finds some kiddie porn. He contacts Detective Colson, or excuse me, Prosecutor Colson and says, I found this kiddie porn. Should we continue with the search or should we abandon the search and get a search warrant? Colson says, continue with the search. You have a right to search this because of the probation violation. After they review the kiddie porn, he calls him back. He calls him back to find out, should I affect arrest? And Colson says, no, submit me a report. I'll review the report. I'll make any charging decisions. And what does Armstrong tell Colson, according to his, that? It's right in his report on page 36 of the record. It says that Steve Christian had a convicted, was a convicted felon, and that he had been convicted of L&L in the late 1970s. So he has disclosed that the conviction, it's on page 36, right in his police report, he disclosed in his report that the conviction is in the late 1970s. Now, Colson already knew that because Colson had independently determined when he spoke with probation and parole that the conviction. Doesn't he say something about Christianson may have had his rights restored? What does he say about that? What he says, I then asked Steve if he had, and this is on page 38 of the record, I then asked Steve if he had ever been to court proceedings or received any court documents restoring his rights possession of firearms, and Steve stated that he couldn't remember. He did state that he had asked Les Day to restore his rights but wasn't sure if it was ever done. That's what he reports and reports that this happened in the 70s. You have five minutes. Do you want to reserve? Let me continue for just one moment. Okay, but you're just using your time. That's fine with me. Thank you. The magistrate had the same information when the arrest warrant was issued. That is to say that the conviction was in the 1970s and issued an arrest warrant so the magistrate didn't pick up on the fact that the law didn't apply. The prosecutor didn't pick up on the fact that the law didn't apply. The case then went to a preliminary hearing. The defense counsel did not raise the issue at the preliminary hearing that the statute did not apply, and it wasn't until this case got to the district court was it raised for the first time that the statute under which he'd been charged didn't apply because its conviction was some 10 to 15 years prior to the application date of the statute. Now, what we have here is no indication of any undue influence by the detective in trying to get this person charged. He submitted his report, and he walked away from the case. And Colson testifies in his affidavit, and it's on pages 52 through 53, that he made an independent determination as to how to charge this individual, and he made a mistake. He never, ever looked at the statute to see that the statute didn't apply. We can't expect the prosecutor or the magistrate to determine that, and there's certainly no false information given by the detective. The detective certainly, under the decisions of Leon, even, should not be held liable. All right. Thank you. Good morning. My name is Peter Wells, and I represent Mr. Stephen Christensen, who is the plaintiff in this case. There are a number of things that I disagree with Mr. Hall about with regards to the facts in this case. The first one is his statement that Mr. Christensen, or excuse me, Mr. Armstrong, never called Prosecutor Colson about the firearms. I believe if you will look to the record, the appellee's record, page 37, you will find an excerpt from the preliminary hearing from Mr. Christensen. That excerpt is Mr. Armstrong's testimony. In that testimony, he describes showing up at Mr. Christensen's residence, talking with probation and parole about what they had found so far, being informed by probation and parole that they had found firearms and that probation and parole had talked to Mr. Colson and that they believed he was in violation of the Idaho statute for being a felon in possession of firearms. The most important thing here is that Mr. Armstrong then says, I then called Mr. Colson about possible violations for Mr. Christensen having these firearms. So there is a dispute of fact between the preliminary hearing transcript where Mr. Armstrong was under oath and being questioned on direct examination and his affidavit, and also Mr. Colson's affidavit, with regards to whether or not there were conversations by these parties related to filing charges for the firearms. Well, here's where I see that these are the weaknesses that I see in your case that I'd like you to address. It appears that Newman requires something additional, and then you've got the cases of Burunda and Barlow. And in Beck v. City of Upland, this court recognized that under Newman, a plaintiff must present information in addition to his own account that contradicts the police report to avail himself to the showing. Did Christensen produce any such evidence? You know, Beck and Newman and Barlow, Burunda, and Smitty are all kind of interesting the way they interplay. Because if you take a really close look at those cases, what they're talking about is about the incidences related to probable cause for the arrest, not related to the malice element that comes from Melissa's prosecution. In both Newman, Burunda, Beck, all of those cases, they were all dealing with the probable cause for the arrest. Well, except the language in Newman, at least, is a lot harder. They talk about the presumption that the prosecutor exercised independent judgment. If you can't overcome that position, your case is dead because that also knocks down the malice argument. Except for Beck comes out later to say that in cases of constitutional torts, like Fourth Amendment analysis, in issues where we have the substantive issue is probable cause, the lack of probable cause should be enough to destroy the prosecutorial independence factor. Well, except for, you know, qualified immunity is, it's quirky in the sense, but it exists. And it basically gets, it allows police officers to make mistakes and not have to face trial. Because what we ask police officers to do, you know, we would never get anyone to do it if we could demand perfection. And honestly, I wouldn't do this job if I didn't have judicial immunity because every time someone didn't agree with me, I'd get sued because they would say I was wrong. And police officers have to go out and make these decisions. And so in making mistakes, I mean, the case law develops in the sense when you talk to a prosecutor, you go to a judge, we allow them, it's not supposed to be a sword and a shield, but it does allow them some shield because we want police officers to seek legal advice. And, you know, honestly, if you're a police officer and you go to the magistrate judge or the prosecutor and say, oh, I'm sorry, you don't really know the law. I was both of those. And the officer usually gets a response, well, officer, I don't tell you how to do your job. Don't tell me how to do mine. And so here we have a situation where we've got all of those levels. And it was a mistake. They were wrong on the law. But it's like everyone else has immunity. And so now you've got to slap it back on the police officer. And that's why these cases say that you can break the chain of causation between the unconstitutional actions when you intersect the magistrate, the prosecutor. And it's difficult to see how that didn't happen here. Okay. I think what the cases say is that, yeah, we expect people to make mistakes, but we don't expect them to act with malice. And that's why malice is a question of fact for the jury. Whether or not there was probable cause, hey, that's a legal determination. That's something that we expect the courts and trained legal professionals to come up with. But when we're dealing with malice, and that's the issue here, malice can be inferred through circumstantial evidence. My client says that he had a lengthy conversation with Detective Armstrong about all of the things he had done since his conviction, all of the things that stated very clearly that his rights had been restored. Detective Armstrong doesn't mention them. He doesn't say they weren't said. He just says he doesn't mention them. My client talks about how there was this heated discussion from Detective Armstrong, how Armstrong said he was going to tell all the neighbors. But officers, when they're doing search warrants, so they're out doing this, they don't jump on Westlaw and pull up the statute, research, check what the latest, see, oh, the Supreme Court just came down with Malender, and that gave Leon exceptions too. That's the job of judges and prosecutors. And that's why we want officers in those situations to check. And your client didn't get arrested, turned everything over. The prosecutor was on notice that there may be an issue as to restoration of rights. Shame on the prosecutor for not getting it right. But why does the officer have to get blamed when the person that can sit at their desk and pull up Westlaw and pull out the law books and doesn't have to worry about people when you're serving a search warrant? Why isn't that just exactly what happened here? Because the officer had information in his possession that would have been very easy to turn over, that should have been turned over. And instead of turning over any of the evidence that would say to the prosecutor, look, it's obvious this guy's rights have been restored, he puts in things that have the opposite effect. In his police report, he says things like, the guns were purchased from people other than a gun store. He says the guns are owned by other people. But the question is whether all those statements are sufficient to overcome the presumption still that the prosecutor exercised independent judgment. Why are they? Because he put those kinds of things. You think it's going to unduly... I think you're suggesting prejudice of the prosecutor? Yes, I do, because what he does is he stacks the deck. He puts in all of these things that have the opposite conclusion to them. That he bought these guns from somewhere other than when they would have done a background check. But that's what he said, isn't it? No, that's what the officer says happened. No, the officer says that's what Christensen told him. That's what the officer claims, yes. Now, he doesn't put any of the other stuff in, however. He doesn't put anything else in that would make the prosecutor's eyes pop open and go, wait a minute, this doesn't look right. How is he doing this? And so it comes down to you've got these omissions, which the cases that interpret prosecutorial independence state very clearly that if a police officer maliciously leaves out important details, that can be enough to overcome the independent prosecutorial presumption. Well, you know, this case is unusual, because apparently all the people involved in this incident at the time didn't realize that the Idaho statute didn't cover Christensen's conviction, right? Because his conviction was too old. I mean, in other words, it was a mistake of law. And so all of these things, in the background of the fact that the law doesn't cover this incident, are almost irrelevant, aren't they? I mean, the basic mistake was that he can't be guilty because he didn't violate the statute, period, right? That's correct. He can't be guilty. And that's the prosecutor's decision. I mean, Judge Callahan says he's the lawyer. He makes certainly the legal determination, whether there's a law that's been violated by the actions of the police report. That's right, but the facts dictate what constitutes the law. The facts tell us as lawyers when we… Nobody argues the keystone fact. Nobody argues that the conviction is too old. Nobody argues against that, right? No, it's undisputed that there was no probable cause. And that's dispositive of the whole case. Nothing else matters. If the prosecutor knew the law, he would say, no, this conviction is too old. That's all. And it's his call to make. But if the prosecutor had been informed about all of the facts, if the prosecutor had been informed about the facts related to the case, the prosecutor would have checked. The only fact he needed to know was the conviction or whatever, 1973 or whatever, right? That's all he needed to know. And he knew that. Prosecutors don't charge people if it requires a prior felony conviction in order to, you know, that you're not allowed to. You have to look at the conviction because what if the conviction had been set aside? There could be any number of things. And what the officer said is the guy said he's had his rights restored. So you need to look at the conviction and see, did he have a qualifying conviction? As it turns out, the reason it wasn't a qualifying conviction was it was too old. But you always have to look when you're a prosecutor, you've got to look at what the law says, and apparently they didn't. I don't know what was going on inside the prosecutor's mind at that time. I don't have any idea. People make mistakes, and that's what happened. They do. But when you then spend 30 days in jail related to not only the prosecutor's mistake but also the officer's inability to also apply himself to the study of law, which his own Bannock County manual says he's required to do. Okay, why don't you go on. What if it had turned out that he had had his civil rights restored and the officer had gone ahead with it and so forth? That would be a mistake also, would it not? But would that mistake be enough to mean he didn't get qualified immunity? What if it had turned out that his rights had actually been restored through kind of a formal court procedure? We've been talking about the officer making just a mistake. Well, that would be a mistake. If his rights had been restored and the officer didn't realize it, would he be entitled to qualified immunity for that? That mistake. No, I don't think so. And the reason why is because if the officer did not look into that issue, if that issue is presented to him by Mr. Christensen, and it's clear the officer has the ability to look that up very easily and see, and if the officer doesn't do that, I don't know why we should give him immunity for being lazy or for not following proper procedures in investigation. Do you think it's easy to find whether something's been restored? You can a lot of times find that there was a conviction, but pull up court records? You think they can do that on their police vehicle? You bet, no problem. In Idaho it's called the Idaho Repository. So they should research, even though they're talking to a prosecutor, they're talking to a probation officer, that they should just take time out and they should do a total research of everything on the case? Well, he says that he looked up Mr. Christensen's conviction. Why couldn't he then look up whether or not it had been restored? If that was the issue. But that's not even the issue in this case. The issue is whether or not probable cause, the lack of it, destroys the prosecutorial independence. Whether or not there was an independent prosecutor. And looking at Beck, it appears to me that this court in the past, through Beck, has started to move away from the Smitty prosecutorial independence factor. Beck states very clearly that one of the issues that may be dispositive in destroying the prosecutorial independence is the lack of probable cause for the charge. Now, Beck is a case that deals with false arrest, and I acknowledge that this is a malicious prosecution. But the elements are so closely intertwined that they ought to be able to be applied together. And that's the position that we're asking this court to uphold Judge Windmill's decision and allow the case to proceed to trial and give the jury the opportunity to determine whether or not Detective Armstrong acted with malice. Are there any other questions? There don't appear to be. Thank you for your argument. Even under Beck, the court, and I quote, said that the plaintiff must present information in addition to his own account that contradicts the police report. They don't have any such information in this case. And the court in Newman stated that allowing an arrestee to overcome the presumption that a prosecutor exercises his own independent judgment when charging an individual with a crime with a contradictory version of the facts would effectively nullify the presumption. That's why the language that you have in Beck is there. Now, in this case, quite frankly, although counsel has talked about probable cause, it was not Detective Armstrong who made the determination of probable cause. The decision as to whether to charge this individual or not was made independently by the prosecutor, Mr. Colson. He then took that information to a magistrate judge, and the magistrate judge found that there was probable cause for an arrest and issued an arrest warrant. And then Detective Armstrong executed that arrest warrant. The prosecutor didn't apparently understand the law. If anyone made a mistake here, it was the prosecutor by not looking up the statute, because the prosecutor clearly understood, as he said in his own affidavit, that he understood that the date of the felony conviction was in 1978. He never looked up the law to see that it didn't apply because it wasn't after 1991. Thank you, Your Honor. The magistrate should have known, because the magistrate knew that the conviction was in 1970s. And the magistrate didn't look to see that the statute that he was being charged under didn't apply. Well, I think factually you've both done a good job of framing what the issues are before the court. So what has occurred here, it appears to me, is we want to try to hold this officer to understand and to know the law better than the prosecutor, better than the magistrate, when he has done nothing other than presented the evidence and allowed the prosecutor to make an independent determination. The United States Supreme Court stated in Leon, penalizing the officer for magistrate's error rather than his own cannot logically contribute to the difference of the Fourth Amendment violations. And the same logic applies here. All right. Thank you very much for your argument. This matter will stand submitted. Thank you. Thank you.
judges: Hug, Tashima, Callahan